SEYFARTH SHAW LLP
Geoffrey C. Westbrook (SBN 281961)
gwestbrook@seyfarth.com
Jeffrey A. Nordlander (SBN 308929)
jnordlander@seyfarth.com
400 Capitol Mall, Suite 2350
Sacramento, CA 95814-4428
Telephone: 916 498-7033
Facsimile: 916-558-4839

Michael D. Wexler (*pro hac vice*)
mwexler@seyfarth.com
Kevin J. Mahoney (*pro hac vice*)
kmahoney@seyfarth.com
233 S. Wacker Drive, Suite 8000
Chicago, IL 60606
Telephone: 312-460-5000
Facsimile: 312-460-7000

Attorneys for Plaintiff
VIBRANTCARE REHABILITATION, INC.

# IN THE UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| VIBRANTCARE REHABILITATION, INC., <br><br> Plaintiff, <br><br> vs. <br><br> KIRAN DEOL, and John and Janes Does 1 through 10. <br><br> Defendants. | Case No. 2:20-cv-00791-MCE-AC <br><br> **PLAINTIFF'S FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF** <br><br> **DEMAND FOR JURY TRIAL** <br><br> *Complaint Filed:* April 26, 2020 |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff VibrantCare Rehabilitation, Inc. ("VibrantCare"), for its Complaint for Injunctive and Other Relief against Defendant Kiran Deol ("Deol" or "Defendant"), states as follows:

## INTRODUCTION

1. VibrantCare is one of the largest providers of outpatient physical and occupational therapy services in the Western United States. VibrantCare operates 44 locations, including several locations in the Sacramento area, where its employees offer a full range of physical and occupational therapy services to patients seeking medical care.

2. One of the key drivers of VibrantCare's success is its ability to attract and retain qualified physical and occupational therapists for its workforce. The United States already has a shortage of physical and occupational therapists, such that the demand for licensed practitioners among VibrantCare and other providers is already incredibly high.

3. Just as importantly, VibrantCare competes with other physical and occupational therapy providers for patients and referrals. Towards that end, VibrantCare has developed an extensive—and highly confidential—network of vendors, referral sources, contacts, and business strategies to develop and retain a base of patients and referral sources.

4. VibrantCare hired Deol in March of 2018 as a corporate recruiter. In that role, Deol was responsible for finding, soliciting, and hiring qualified therapists for VibrantCare's operations. At the time that she terminated her employment with VibrantCare, Deol was a Director of Recruiting who oversaw VibrantCare's recruiting operations in multiple states. At the same time, and in order to allow her to attract and work with potential hiring candidates, Deol had access to VibrantCare's confidential information and trade secrets regarding its vendor and referral network, patient scheduling system, business strategies, costs and payment structure, margins, and other highly sensitive information.

5. On January 19, 2020, Deol gave VibrantCare notice of her resignation effective January 31, 2020. VibrantCare later discovered that by the time she resigned, Deol had been offered and accepted the position of Director of Talent Acquisition for Golden Bear Physical Therapy and Sports Injury Center, Inc. ("Golden Bear"). Golden Bear is a direct competitor of VibrantCare in Northern California.

1

FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

6. After Deol notified VibrantCare of her resignation, VibrantCare investigated her use of her VibrantCare-issued e-mail account and electronic devices. That investigation revealed that Deol misappropriated a significant amount of VibrantCare's confidential, proprietary, and trade secret information before her resignation. Specifically, Deol emailed VibrantCare's highly sensitive information to her personal e-mail account in the days before her final workday with VibrantCare. Deol also emailed confidential patient information to her personal email.

7. Deol's actions are in violation of California and federal law, as well as a breach of her contractual obligations and duties owed to VibrantCare. Upon information and belief, Deol is using VibrantCare's highly confidential and trade secret information to further the interests of Golden Bear. VibrantCare has already been harmed and, without this Court's intervention, will continue to be harmed by Deol's actions.

## PARTIES

8. VibrantCare Rehabilitation, Inc. is a corporation organized and existing under the laws of the State of California, with its principal place of business in Roseville, California.

9. Deol is an individual who resides in Roseville, California.

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction under 28 U.S.C. § 1331 as this matter arises under the Defend Trade Secrets Act of 2016, codified at 18 U.S.C. § 1836 *et seq.*, with jurisdiction being expressly conferred in accordance with 18 U.S.C. § 1836(c). The Court has supplemental jurisdiction over all related claims herein in accordance with 28 U.S.C. § 1367.

11. This Court has personal jurisdiction over Defendant, and venue is proper in this district under 28 U.S.C. § 1391(b)(1) as Deol resides within this district. Venue is also proper in this district under 28 U.S.C. 1391(b)(2) as Deol's tortious acts were committed in this district and will cause harm to VibrantCare in this district.

## EVENTS GIVING RISE TO THIS ACTION

**VibrantCare's Business and Deol's Role**

12. VibrantCare is a leading provider of outpatient physical and occupational therapy services in California. VibrantCare's physical and occupational therapists provide services to patients

recovering from surgeries, strokes, amputations, traumatic injuries, or otherwise needing medical care. The services that VibrantCare provides through its team of therapists help patients return to work or simply regain mobility for their daily lives. VibrantCare's carefully-developed network of therapists, vendors, providers, business methods, and strategies for providing patient care make VibrantCare one of the largest, and most successful, outpatient therapy providers.

13. The United States already has a shortage of qualified physical and occupational therapists. As the population of the United States ages, the need for qualified therapists is expected to grow exponentially over the next decade—indeed, the Bureau of Labor Statistics projects that the needs for physical and occupational therapists will outpace almost every other profession in the coming years. As a result, the competition among providers like VibrantCare to hire and retain therapists is significant.

14. Beyond competition for qualified therapists, the competition among providers like VibrantCare for patients and referral sources is also significant. VibrantCare makes substantial, continuous investments to develop its proprietary and trade secret business models, patient scheduling systems, network of vendor contacts, referral sources, and pricing and business strategies that allow it to grow and maintain its business.

15. In order to accomplish their duties, certain employees of VibrantCare, including Deol, receive access to and training on VibrantCare's confidential, proprietary, and trade secret information, including:

- Therapist hiring and retention strategies, including strategies for which third-party sources and vendors are most successful in placing qualified candidates at VibrantCare;
- Marketing plans and promotional strategies for VibrantCare;
- Pricing strategies, including terms and conditions of agreements with third-parties, profit margins, and vendor pricing discounts; and
- Competitive strategies, including those against Golden Bear.

16. Deol was able to access all of this information by using the network credentials issued to her by VibrantCare. Deol used that information in order to allow her to fulfill her job duties while employed by VibrantCare.

17. VibrantCare took reasonable steps to make sure that the above-referenced information was kept secure, including by requiring all employees with access to such information to enter into

agreements requiring them to keep that information confidential, restricting access to such information with electronic encryption, and requiring anyone accessing such information to use unique login credentials and passwords issued by VibrantCare.

18. Deol was initially hired as a recruiting coordinator in March of 2018. In 2019, she was promoted to be VibrantCare's Recruiting Director not just for locations in California, but in other states as well. Deol remained employed in that role until her resignation effective January 31, 2020.

**Deol's Contractual Obligations to VibrantCare**

19. On March 5, 2018, in consideration of her employment at VibrantCare and access to its confidential information and trade secrets, Deol executed the VibrantCare Employee Agreement ("the Agreement"). (A true and correct copy of the Agreement is attached as **Exhibit A**.)

20. Deol's employment at VibrantCare and compensation, access to and receipt of VibrantCare's trade secrets and confidential information, and substantial training at VibrantCare were contingent upon her execution of the Agreement.

21. The Agreement defines "Confidential Information" as:

> "[A]ll information in any way concerning the activity, business or affairs of the Company or any of the customers or clients of the Company, including, without limitation, information which concerns or constitutes a trade secret of the Company, all sales and financial information concerning the Company, all policies and procedures of the Company, all pricing information about the products or services offered by the Company, all information concerning projects in research and development or marketing plans for any services, product or projects of the Company, all employee lists or other information identifying the customers, clients, referral sources, and payors of the Company, all information in any way concerning the activities, business, or affairs of any customers, clients, referral sources, and payors of the Company, which are furnished to you by the company or any of its agents, customers or clients, or otherwise acquired or developed by you during the course of your employment, and all information concerning the consultants or vendors used by the Company.

(*Id*. § 1.)

22. Given VibrantCare's legitimate interests in protecting its confidential information, Deol specifically agreed not to disclose it without authorization:

> In consideration for your employment and the compensation and benefits offered to you in connection therewith, you will, during your employment with the Company and at all times thereafter, treat all confidential material (as hereinafter defined) of the company confidentially. You will not, without the prior written consent of the President of the Company, disclose such confidential material, directly or indirectly, to any party who at the time of such disclosure is not an employee or agent of the Company, or remove from the premises of the Company any notes or records relating thereto, copies thereof, or any

property, provided that confidential information may be taken home when you plan to work at home if returned upon the completion of such work.

(*Id*. § 1.) Hereinafter, this provision shall be referred to as the "Non-Disclosure Provision."

23. The Agreement also contains other post-employment restrictive covenants upon Deol. To be clear, VibrantCare is not seeking to enforce those other restrictions in this lawsuit. By this action, VibrantCare only seeks to enforce the Non-Disclosure Provision of the Agreement.

24. Deol explicitly recognized that the Non-Disclosure Provision was reasonable and "necessary in order to protect, maintain and preserve the value and goodwill of the business and other legitimate business interests of the Company." (*Id.* § 4.) Deol also agreed that, if she breached the Non-Disclosure Provision, VibrantCare would be entitled to injunctive relief to prevent any ongoing breach of the Agreement. (*Id.*) Deol further agreed that VibrantCare would be entitled to its reasonable attorneys' fees and costs if VibrantCare was forced to initiate legal proceedings to enforce the terms of the Agreement, including the Non-Disclosure provision. (*Id.* § 7).

**Deol Breaches Her Duty Of Loyalty To VibrantCare and Misappropriates VibrantCare's Confidential and Trade Secret Information**

25. On January 19, 2020, Deol announced her intent to resign from VibrantCare. At that time, Deol concealed from VibrantCare that she had taken a position with Golden Bear. She continued to work in her position for the next two weeks.

26. After Deol's last day of employment and VibrantCare's discovery that she had taken a recruiting position with Golden Bear, VibrantCare conducted an investigation into Deol's activities on her VibrantCare-issued e-mail and electronic devices. That investigation discovered that Deol had misappropriated a significant volume of VibrantCare's confidential and trade secret information by e-mailing it to her personal e-mail shortly before her resignation.

27. For example, on January 28, 2020, just days before her resignation was effective, Deol received a highly confidential analysis prepared by other VibrantCare employees analyzing VibrantCare's referral sources and setting forth VibrantCare's business strategy in working with those sources in the future. Deol forwarded that email and analysis to her personal e-mail account.

28. The same day, Deol received a highly confidential report detailing the percentages of cancelled appointments at VibrantCare locations in several states (a key metric driving the efficiency of VibrantCare's operations), and discussing VibrantCare's strategy to increase scheduling efficiency in the future. Those e-mails included sensitive patient information. Deol also forward that e-mail and report to her personal email account.

29. Deol did not have authorization to forward those materials, or any of VibrantCare's other confidential and trade secret information, to her personal mail. None of that information was returned to VibrantCare upon the effective date of Deol's resignation. The information that Deol took was used in VibrantCare's provision of services in interstate commerce.

30. In the course of its investigation, VibrantCare also learned that, after her resignation, Deol reached out to vendors used by VibrantCare to perform work on behalf of Golden Bear. The identity of those vendors was highly-confidential information because the vendor carried out aspects of VibrantCare's business strategy and for which Deol agreed not to use or disclose without authorization.

31. Further, upon information and belief, Deol contacted recruiting candidates *while* she was still employed by VibrantCare and discouraged those individuals from accepting employment with VibrantCare, so that she could later solicit those candidates on behalf of Golden Bear.

32. Deol's conduct in redirecting recruiting candidates to Golden Bear, while she was an employee of VibrantCare, harmed VibrantCare. Competition among providers like VibrantCare and Golden Bear to hire and retain therapists is significant. Deol's conduct prevented VibrantCare from hiring qualified physical therapy candidates that would have done work at VibrantCare facilities and generated revenue and profit for VibrantCare.

33. Upon information and belief, Deol's conduct also caused VibrantCare to have to incur additional costs and expenses to identify and recruit replacements for the candidates Deol redirected from VibrantCare to Golden Bear. VibrantCare would not have incurred these additional costs and expenses but for Deol redirecting qualified candidates from VibrantCare to Golden Bear.

34. VibrantCare also suffered harm because it paid Deol salary and benefits while she, although nominally an employee of VibrantCare, was secretly working for the benefit of Golden Bear.

35. On February 14, 2020, counsel for VibrantCare sent a letter to Deol reminding her of her obligations to VibrantCare, notifying Deol that VibrantCare was aware of her misappropriation of its confidential and trade secret information, and demanding that Deol not take any steps to use, access, or alter that information until further notice. (*See* February 14, 2020 Letter attached hereto as **Exhibit B**.)

36. On February 19, 2020, Golden Bear responded, purportedly on behalf of itself and Deol. While Golden Bear claimed that it had not received any of VibrantCare's information, troublingly, it also claimed that it had not "retained" any such information. (*See* February 19, 2020 Letter attached hereto as **Exhibit C.**)

37. Perhaps even more concerning, Golden Bear's correspondence claimed that Deol had destroyed all information related to VibrantCare in her personal e-mail account, and that Deol had done so before receiving VibrantCare's February 14th correspondence. Put differently, either (1) Deol destroyed critical electronic evidence that would show her use of VibrantCare's confidential and trade secret information, or (2) if Golden Bear is to be believed, Deol sent VibrantCare's confidential and trade secret information to herself as recently as January 28th, then had a completely unprompted change of heart and deleted that information within two weeks, but before receiving VibrantCare's demand letter.

38. In further correspondence, counsel for Golden Bear claimed that it would conduct a forensic analysis of Deol's personal computer to ensure that none of VibrantCare's information remained on it. Yet Golden Bear only offered to search Deol's devices for search terms determined by *Golden Bear*, and would not commit to any timeframe for its search. And Golden Bear also offered to search Deol's business computer for such information, despite earlier indicating that Deol had never shared VibrantCare's confidential and trade secret information with Golden Bear. Golden Bear's offer was made on March 23, 2020, yet no such report of a forensic analysis has been produced.

39. All told, Deol is causing, threatening, and/or will continue to cause or threaten significant irreparable harm to VibrantCare, including the loss of value of confidential and/or proprietary information, loss of goodwill, and damages to its ability to successfully market its goods and services.

# COUNT I

## BREACH OF CONTRACT

40. VibrantCare hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 39.

41. The Agreement that Deol entered into with VibrantCare constitutes a valid and enforceable contract.

42. VibrantCare performed all of the duties and obligations it agreed to and owed Deol under her Agreement.

43. The Non-Disclosure Provision in the Agreement is reasonable and tailored to protect VibrantCare's interest in protecting its confidential and trade secret information.

44. Deol breached the Agreement, including the Non-Disclosure Provision, by misappropriating VibrantCare's confidential and trade secret information without VibrantCare's authorization.

45. As a result of Deol's breaches of contract, VibrantCare has been irreparably injured, and it continues to face irreparable injury. It is threatened with losing the value of its confidential and proprietary information, customer relationships, and goodwill, for which a remedy at law is inadequate. Accordingly, Deol must be enjoined and restrained by Order of this Court.

46. In addition, VibrantCare seeks actual, incidental, compensatory, and consequential damages based on Deol's blatant violations of the Agreement in an amount to be determined at trial. VibrantCare also seeks its reasonable attorneys' fees and costs in connection with bringing this action, as allowed under Section 7 of her Agreement.

# COUNT II

## UNFAIR COMPETITION

47. VibrantCare hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 39.

48. Upon information and belief, Deol contacted recruiting candidates while she was still employed by VibrantCare and discouraged those individuals from accepting employment with VibrantCare, so that she could later solicit those candidates on behalf of Golden Bear.

49. Deol's conduct in redirecting recruiting candidates to Golden Bear, while she was still an employee of VibrantCare, harmed VibrantCare. Competition among providers like VibrantCare and Golden Bear to hire and retain therapists is significant. Deol's conduct prevented VibrantCare from hiring qualified physical therapy candidates that would have done work at VibrantCare facilities and generated revenue and profit for VibrantCare.

50. Upon information and belief, Deol's conduct also caused VibrantCare to have to incur additional costs and expenses to identify and recruit replacements for the candidates Deol redirected from VibrantCare to Golden Bear. VibrantCare would not have incurred these additional costs and expenses but for Deol redirecting qualified candidates from VibrantCare to Golden Bear.

51. VibrantCare also suffered harm because it paid Deol salary and benefits while she, although nominally an employee of VibrantCare, was secretly working for the benefit of Golden Bear.

52. To be clear, this claim is not based upon Deol's misappropriation of VibrantCare's trade secret or confidential information, but is instead based upon her actions, while employed by VibrantCare, in directing VibrantCare recruiting candidates to seek employment with Golden Bear instead.

53. Deol's acts of unfair competition were willful, malicious, and intentional.

54. VibrantCare seeks disgorgement of salary and benefits it paid to Deol, as well as actual, incidental, punitive, compensatory, and consequential damages based on Deol's conduct in an amount to be determined at trial.

## COUNT III

## BREACH OF FIDUCIARY DUTY

55. VibrantCare hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 39.

56. As an employee of VibrantCare, Deol had a fiduciary duty of loyalty to act in the best interests of VibrantCare during the course of her employment.

57. Deol breached her fiduciary duty to VibrantCare by, among other things, upon information and belief, discouraging hiring candidates from accepting employment with VibrantCare so that Deol could later solicit their employment at Golden Bear.

9

58. This claim is not based upon Deol's misappropriation of VibrantCare's trade secret or confidential information, but is instead based upon her actions, while employed by VibrantCare, in directing VibrantCare recruiting candidates to seek employment with Golden Bear instead.

59. Deol's conduct in redirecting recruiting candidates to Golden Bear, while she was still an employee of VibrantCare, harmed VibrantCare. Competition among providers like VibrantCare and Golden Bear to hire and retain therapists is significant. Deol's conduct prevented VibrantCare from hiring qualified physical therapy candidates that would have done work at VibrantCare facilities and generated revenue and profit for VibrantCare.

60. Upon information and belief, Deol's conduct also caused VibrantCare to have to incur additional costs and expenses to identify and recruit replacements for the candidates Deol redirected from VibrantCare to Golden Bear. VibrantCare would not have incurred these additional costs and expenses but for Deol redirecting qualified candidates from VibrantCare to Golden Bear.

61. VibrantCare also suffered harm because it paid Deol salary and benefits while she, although nominally an employee of VibrantCare, was secretly working for the benefit of Golden Bear. Deol's actions, taken while still an employee of VibrantCare, were a breach of her fiduciary duties, including her duty of loyalty.

62. VibrantCare has been damaged by Deol's breach of her fiduciary duties, and seeks actual, incidental, punitive, compensatory, and consequential damages based on Deol's conduct in an amount to be determined at trial.

## COUNT IV

## **VIOLATION OF THE DEFEND TRADE SECRETS ACT**

63. VibrantCare hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 39.

64. During the course of her relationship with VibrantCare, Deol was provided access to VibrantCare's confidential information, including the confidential information identified herein.

65. VibrantCare's confidential information is not available to the general public and is closely guarded by VibrantCare. VibrantCare keeps such information strictly confidential in order to maintain a competitive advantage over competitors.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

66. VibrantCare's confidential information is considered a trade secret under the Defend Trade Secrets Act, 18 U.S.C. § 1833, et seq. ("DTSA"), because the information is not generally known outside of VibrantCare's business, the information is not generally known by employees and others involved in VibrantCare's business, VibrantCare has taken reasonable measures to guard the secrecy of the information, the information is of great value to VibrantCare and its competitors, VibrantCare invested significant amounts of time and money in developing the information, the information cannot easily be acquired or duplicated by others, and because VibrantCare continuously uses the information in its business. The trade secret information that Deol misappropriated from VibrantCare is used in interstate commerce.

67. Deol had a contractual obligation to return VibrantCare's confidential information to VibrantCare immediately upon termination of her employment.

68. Deol, however, ignored (and continues to ignore) her obligations to return VibrantCare's confidential information. Upon information and belief, Deol is using that information on behalf of her new employer, Golden Bear.

69. Unless restrained, Deol will continue to use, divulge, disclose, acquire and/or otherwise misappropriate VibrantCare's confidential information.

70. Furthermore, actual or threatened misappropriation of confidential information may be enjoined under the DTSA. Injunctive relief against Deol is therefore appropriate.

71. VibrantCare requests an order enjoining Deol from using VibrantCare's confidential information and from disclosing VibrantCare's confidential information to anyone not authorized to receive it.

72. VibrantCare further requests an order requiring Deol to return any and all VibrantCare's confidential information to VibrantCare.

73. Finally, Deol's misappropriation of VibrantCare's confidential information has been willful and malicious, and VibrantCare has incurred significant damages as a result of Deol's misappropriation.

74. Deol's actions have also damaged VibrantCare's goodwill, reputation, and legitimate business interests.

VibrantCare is therefore entitled to recover not only compensatory damages, but also punitive damages and attorneys' fees resulting from Deol's wrongfully misappropriation of VibrantCare's confidential information.

## COUNT V

## VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT

75. VibrantCare hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 39.

76. During the course of her relationship with VibrantCare, Deol was provided access to VibrantCare's confidential information, including the confidential information identified herein.

77. VibrantCare's confidential information is not available to the general public and is closely guarded by VibrantCare. VibrantCare keeps such information strictly confidential in order to maintain a competitive advantage over competitors.

78. VibrantCare's confidential information is considered a trade secret under the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 et seq. ("CUTSA"), because the information is not generally known outside of VibrantCare's business, the information is not generally known by employees and others involved in VibrantCare's business, VibrantCare has taken reasonable measures to guard the secrecy of the information, the information is of great value to VibrantCare and its competitors, VibrantCare invested significant amounts of time and money in developing the information, the information cannot easily be acquired or duplicated by others, and because VibrantCare continuously uses the information in its business.

79. Deol had a contractual obligation to return VibrantCare's confidential information to VibrantCare immediately upon termination of her employment.

80. Deol, however, ignored (and continues to ignore) her obligations to return VibrantCare's confidential information. Upon information and belief, Deol is using that information on behalf of her new employer, Golden Bear.

81. Unless restrained, Deol will continue to use, divulge, disclose, acquire and/or otherwise misappropriate VibrantCare's confidential information.

82. Furthermore, actual misappropriation of confidential information may be enjoined under the CUTSA. Injunctive relief against Deol is therefore appropriate.

83. VibrantCare requests an order enjoining Deol from using VibrantCare's confidential information and from disclosing VibrantCare's confidential information to anyone not authorized to receive it.

84. VibrantCare further requests an order requiring Deol to return any and all VibrantCare's confidential information to VibrantCare.

85. Finally, Deol's misappropriation of VibrantCare's confidential information has been willful and malicious, and VibrantCare has incurred significant damages as a result of Deol's misappropriation.

86. Deol's actions have also damaged VibrantCare's goodwill, reputation, and legitimate business interests.

87. VibrantCare is therefore entitled to recover not only compensatory damages, but also punitive damages and attorneys' fees resulting from Deol's wrongfully misappropriation of VibrantCare's confidential information.

## JURY TRIAL DEMAND

88. VibrantCare demands this action be determined by trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, VibrantCare seeks judgment in its favor and an Order against Deol that grants the following relief:

A. Enjoins Deol, and all those in active concert or participation with her, from using, disclosing, or otherwise misappropriating VibrantCare's confidential and trade secret information;

B. Awards VibrantCare actual, incidental, compensatory, and consequential damages to be proven at trial;

C. Awards VibrantCare exemplary or punitive damages in an amount to be proven at trial due to Defendant's willful and malicious activities;

D. Awards VibrantCare its reasonable attorneys' fees and costs in bringing this action for breach of the Agreement, as agreed in Section 7 of the Agreement and provided for in the DTSA; and

E. Awards VibrantCare such further relief as the Court deems necessary and just.

Dated: May 14, 2021

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Geoffrey C. Westbrook*
　　　Geoffrey C. Westbrook
　　　Michael D. Wexler
　　　Kevin J. Mahoney

Attorneys for Plaintiff
VIBRANTCARE REHABILITATION, INC.